Present: Carrico, C.J., Lacy, Hassell, Keenan, Koontz, and
         Kinser, JJ., and Poff, Senior Justice

DOUGLAS TYRONE OULDS

                                OPINION BY
v.  Record No. 992489     SENIOR JUSTICE RICHARD H. POFF
                             June 9, 2000
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

The principal issue raised on this appeal is whether the Court of Appeals of Virginia correctly ruled that, in the course of prosecution of an indictment of a felony defined in a Virginia statute, the Commonwealth proved the elements of the charged crime including the adoption of a city ordinance authorizing police officers to utilize their police powers while engaged in off-duty employment.

Douglas Tyrone Oulds was convicted in a bench trial conducted in the Circuit Court of the City of Lynchburg of the commission of "assault and battery on . . . a law enforcement officer engaged in the performance of his public duties, in violation of Virginia Code § 18.2-57 . . . ."  The trial judge imposed a sentence of three years and eight months in prison with two years and five months suspended during good behavior. In an unpublished opinion, Oulds v. Commonwealth, Record No. 2062-98-3 (September 28, 1999), the Court of Appeals affirmed the judgment, and we awarded Oulds this appeal.

I. THE FACTS

We will summarize the facts from the record of the testimony delivered at trial by the defendant, the victim of the assault, and an eyewitness to that assault.

Paul R. Adams, a Lynchburg City policeman, had worked off-duty for 12 years as a security guard at the Plaza, a shopping center in Lynchburg. Adams testified that the police department had formally approved his off-duty employment and authorized him to act "dressed in uniform, carrying his side arm, handcuffs, and some other implements of a police officer." In the exercise of the authority granted by the department and the Plaza, Adams had notified Oulds that he was "barred from the Plaza and that if he ever came back over there again, he would be arrested for trespassing." Adams recalled that he had been "previously familiar with Mr. Oulds" on "[t]wo other occasions at the Plaza involving arrests."

On the occasion relevant here, Adams saw Oulds at the Plaza and attempted to handcuff and arrest him for trespassing. During the struggle that ensued, Adams sustained wounds to his mouth and to his right index finger. Oulds broke free from the struggle and ran to another section of the Plaza, where he was arrested with the aid of police officers. Ms. Sarah Reeves, a manager of a department in one of the stores in the Plaza, testified that she had witnessed the injuries Adams suffered in a "wrestling match", Oulds' attempt to flee, and his arrest.

## II. JUDICIAL NOTICE

In support of a motion to strike the Commonwealth's evidence, Oulds contended that the Commonwealth had failed to prove the elements of the crime because it did not introduce an authenticated copy of a city ordinance enacted in compliance with Code § 15.2-1712 (formerly § 15.1-33.1) authorizing police officers to use their police power in off-duty employment. In response, the Commonwealth identified the city ordinance as "Section 31.5 . . . which basically, expressly gives police officers permission, as long as they follow the guidelines, to work off duty in the City of Lynchburg."[1] Announcing that he had "ruled before . . . on the very same point," the trial judge overruled the motion to strike.

Affirming Ould's conviction on appeal, the Court of Appeals held that a trial court "need not admit formally the ordinances of the jurisdiction where it sits because it is required to take judicial notice of those laws." In an assignment of error on appeal to this Court, Oulds contends that "the Court of Appeals erred in the application of the doctrine of judicial notice." That error exists, according to Oulds, because "the prosecution

---

[1] The Lynchburg ordinance, a copy of which was included in the record on appeal to the Court of Appeals, provided that "police officers will be permitted to engage in off-duty employment which requires the use of their police powers." Such an ordinance was definitively authorized by former Code § 15.1-33.1 (now, § 15.2-1712), which permits, but does not require, a locality to enact such regulations.

did not ask to take judicial notice of " the ordinance, and "a copy of the ordinance was not admitted as evidence."  We disagree with Oulds' argument.

Oulds' contentions ignore the plain language and function of the Virginia statute defining the doctrine of judicial notice.  Code § 19.2-265.2(A) reads as follows:

> Whenever, in any criminal case it becomes necessary to ascertain what the law, statutory or otherwise, of this Commonwealth, of another state, of the United States, of another country, or of any political subdivision or agency of the same is, or was, at any time, the court shall take judicial notice thereof whether specially pleaded or not.

This statute eliminates the necessity of introducing an authenticated copy of a city ordinance into evidence and that the ordinance be "specially pleaded."  In this case, as recited above, the Commonwealth specifically directed the trial court's attention to the city ordinance in question.  Thus the Court of Appeals did not err in concluding that, under the principle of judicial notice, the Commonwealth met its burden to prove that the city had adopted an ordinance authorizing police officers to work off-duty.

Oulds also complains that the trial court erroneously allowed hearsay testimony to establish the existence of and compliance with regulations adopted by the city regarding off-duty employment by police officers.  Again we disagree.

Here, Officer Adams' testimony that he had complied with the department's directives concerning off-duty employment was

4

not offered to prove the existence and content of such regulations.

### III. PUBLIC DUTIES

We do agree with Oulds that "the prosecution must prove a law enforcement officer is performing his public duties to sustain a felony conviction under Va. Code Ann. § 18.2-57." Yet, we disagree with Oulds' view that the evidence in this case was insufficient to prove that Adams was engaged in the performance of public duties.

The felony of which Oulds was convicted is defined in Code § 18.2-57(C). That statute provides that "if any person commits an assault or an assault and battery against another knowing or having reason to know that such other person is a law-enforcement officer . . . engaged in the performance of his public duties as such, such person shall be guilty of a Class 6 felony . . . ."

The evidence, including Oulds' own testimony, clearly shows that Oulds committed an "assault and battery" upon Adams; that Oulds recognized Adams as a "law enforcement officer"; and that Adams was engaged in the arrest of a person who had committed a criminal trespass upon private property.[2] As the Court of Appeals' concluded, Adams' "private employment did not relieve

---

[2] Police officers "may arrest, without a warrant, any person who commits any crime in the presence of the officer . . . ." Code § 19.2-81.

him of the responsibility or authority to maintain the peace, protect property, and enforce the laws of the Commonwealth." Accordingly, we hold that Adams was "engaged in the performance of his public duties" when he was assaulted by Oulds.

Finding no error of record in this appeal, we will affirm the judgment of the Court of Appeals.

<u>Affirmed.</u>