COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judges Elder and Annunziata
Argued at Chesapeake, Virginia


LENARD DAVIS

                                                        OPINION BY
v.        Record No. 2848-03-1                 JUDGE ROSEMARIE ANNUNZIATA
                                                     DECEMBER 14, 2004
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                         Mark S. Davis, Judge

            Joseph R. Winston, Special Appellate Counsel (Felipita Athanas,
            Appellate Counsel; Public Defender Commission, on briefs), for
            appellant.

            Susan L. Parrish, Assistant Attorney General (Jerry W. Kilgore,
            Attorney General, on brief), for appellee.


        Lenard Davis appeals his conviction for assault and battery on a police officer, a violation

of Code § 18.2-57(C).  Davis contends that the Commonwealth failed to prove that the police

officer he assaulted was engaged in the performance of his public duties.  He also contends the

evidence was insufficient to prove he knew the officer was engaged in the performance of his

public duties.  For the following reasons, we affirm.

                                    I.  Background

        In accord with our usual standard of review, we review the evidence and the reasonable

inferences that may be drawn from the evidence in a light most favorable to the Commonwealth

as the party prevailing below.  Garcia v. Commonwealth, 40 Va. App. 184, 189, 578 S.E.2d 97,

99 (2003).

        So viewed, the evidence establishes that on May 9, 2003, Portsmouth City Police Officer

C.B. Honeycutt was driving into Harbor Square Apartments, which are located within the city

limits, when he saw Lenard Davis engaged in a hand-to-hand transaction, the nature and content of which was suspicious but unclear. Although Honeycutt was driving a vehicle marked "Portsmouth Police," he was off-duty and not in uniform. Honeycutt, a security guard for the apartment complex, was on the property in his "capacity as a security agent for the property."

Davis walked to the police car and said, "What's up, Cutt," using the officer's nickname. Honeycutt exited his vehicle. Davis came closer and whispered, "Cutt, they were just dummies." Honeycutt understood the remark as signifying that the capsules Davis exchanged in the hand-to-hand transaction were imitation heroin. When Honeycutt asked to see the items, Davis reached into his pocket and turned away from the officer. Officer Honeycutt became concerned that Davis was going to swallow the capsules, so he placed his hand on Davis's hand. Davis assured Honeycutt that "he was going to be cooperative [and] there wasn't going to be any problem" and handed the capsules to the officer.

After Honeycutt told Davis he was going to be placed under arrest for possession of heroin, he attempted to handcuff Davis. However, Davis broke free, pushed the officer in the chest, and ran. Honeycutt pursued Davis approximately two-hundred yards when Davis turned and "charged directly" into Honeycutt, who was then ten to fifteen feet behind. Both men fell. After a brief struggle, Honeycutt succeeded in handcuffing Davis.

At trial, Honeycutt testified that he arrested Davis in his capacity as a police officer, explaining his duty as an officer encompassed acting in that capacity whenever he witnessed criminal activity in the City of Portsmouth.

Davis was convicted and sentenced to three years in prison, one year suspended. This appeal followed.

II. Analysis

Code § 18.2-57(C) provides, in part:

> [I]f any person commits an assault or an assault and battery against another knowing or having reason to know that such other person is a law-enforcement officer as defined hereinafter, . . . engaged in the performance of his public duties as such, such person shall be guilty of a Class 6 felony, and, upon conviction, the sentence of such person shall include a mandatory minimum term of confinement of six months.

Davis concedes in his opening brief that he committed an assault and battery on Honeycutt, that Honeycutt is a law enforcement officer, and that he knew Honeycutt was a law enforcement officer. He rests his challenge on appeal on the contentions that: (1) the Commonwealth failed to prove that Honeycutt was engaged in the performance of his public duties as a police officer, and (2) that the Commonwealth failed to prove that Davis knew Honeycutt was so engaged. As grounds for his argument that the Commonwealth failed to prove the former element, Davis cites Honeycutt's status as an off-duty police officer at the time of the assault and battery and the Commonwealth's failure to introduce evidence of a local ordinance authorizing Honeycutt to use his police powers while privately employed. We reject Davis's contentions.

A. The Commonwealth Proved that Honeycutt Was Engaged in the Performance of His Public Duties as a Law Enforcement Officer

Davis argues that the Commonwealth failed to prove Honeycutt was engaged in the performance of his public duties because Honeycutt was off-duty and because no city ordinance, "which provides police power to individuals engaged in private duty employment," was entered into evidence. We find Davis's contentions to be without merit.

Davis relies on Key v. Commonwealth, 21 Va. App. 311, 464 S.E.2d 171 (1995), and Oulds v. Commonwealth, 260 Va. 210, 532 S.E.2d 33 (2000), for the proposition that the Commonwealth must introduce into evidence a local city ordinance authorizing off-duty police

officers to use their police powers in the course of their private employment. We find his reliance on these cases to be misplaced.

In Key, this Court considered whether an off-duty police officer employed as a security guard by a hotel and acting in that capacity when he was assaulted was engaged in the performance of his official duties as a police officer. Key, 21 Va. App. at 312, 464 S.E.2d at 172. We answered that question in the affirmative. Id. at 315, 464 S.E.2d at 173-74. Although we cited a predecessor statute to Code § 15.2-1712—which authorizes localities to "adopt an ordinance which permits law-enforcement officers . . . to engage in off-duty employment which may occasionally require the use of their police powers in the performance of such employment"[1]—and the concomitant local ordinance, neither the statute nor the ordinance drove the analysis or affected the conclusion.[2] See Key, 21 Va. App. at 314, 464 S.E.2d at 173. Instead, our holding turned on the fact that the officer "was fully empowered by his public office to pursue an investigation, detain defendant if necessary, and arrest if justified." Id. at 315, 464 S.E.2d at 173. Because the officer was empowered by his public office to arrest the defendant, "[t]he coincidence of [the officer's] private and public duties during the encounter did not eclipse his authority and responsibility as a law enforcement officer." Id. Thus, Key teaches that,

---

[1] We do not agree with Davis's contention that a local ordinance enacted pursuant to Code § 15.2-1712 must be in place in order to "provide police power to [officers] engaged in private duty employment." Code § 15.2-1712 authorizes, but does not require, localities to adopt an ordinance permitting law enforcement officers to *engage in off-duty employment*. Code § 15.2-1712 does not require localities to confer police powers upon officers so employed; rather, the statute presumes that officers maintain such powers while privately employed. Thus, the statute only addresses whether a police officer may be privately employed, not whether, if privately employed, he may use his police powers.

[2] We noted only that the policy embodied in the local ordinance comported "with Code § 15.1-138, which requires that 'each policeman shall endeavor to prevent the commission . . . of offenses against the law . . .; shall detect and arrest offenders against the same; shall preserve good order . . .; and shall secure the [populace] from violence and . . . property . . . from injury.'" Key, 21 Va. App. at 314, 464 S.E.2d at 173.

- 4 -

whenever an officer reasonably believes one has violated the law, it is his "responsibility as a law enforcement officer" to investigate and, if appropriate, arrest the individual responsible, the officer's off-duty status and private employment notwithstanding.[3]

The holding in Oulds, which was issued subsequent to Key, confirms that a law enforcement officer privately employed and off-duty is not relieved "of the responsibility or authority to maintain the peace, protect property, and enforce the laws of the Commonwealth." Oulds, 260 Va. at 214, 532 S.E.2d at 36 (internal quotations omitted). In Oulds, an off-duty police officer was assaulted while on duty as a private security guard for a shopping plaza when he attempted to arrest the defendant for a criminal trespass. Id. at 212, 532 S.E.2d at 34. Because the officer witnessed a crime and was under a duty to enforce the laws of the Commonwealth, the Supreme Court held that the officer "was 'engaged in the performance of his public duties' when he was assaulted by Oulds." Id. at 214, 532 S.E.2d at 36.[4]

Following the dominant rationales of Key and Oulds, we conclude that Honeycutt was engaged in the performance of his public duty as a police officer to uphold the law when he arrested Davis on probable cause that he possessed heroin in violation of the laws of the

---

[3] Indeed, Code § 19.2-81 confers the power to make a warrantless arrest upon all police officers. The statutory grant of power is not limited to those officers who are on duty or to those who are not privately employed.

[4] The Court in Oulds also considered whether the trial court took proper judicial notice of a local ordinance permitting police officers "'to engage in off-duty employment which requires the use of their police powers.'" Id. at 212 n.1, 532 S.E.2d at 35 n.1 (quoting a Lynchburg city ordinance). Although the Court concluded that the ordinance was properly judicially noticed, the question of whether the Commonwealth had to prove such an ordinance existed was not before the court. A close reading of the Oulds case reveals that its ultimate conclusion—that off-duty police officers act in their official capacity as such when arresting an individual suspected of committing a crime because they have a duty to uphold the laws of the Commonwealth—renders proof of an authorizing local ordinance unnecessary.

Commonwealth.[5]  The result we reach here comports with decisions in other states addressing the issue.  See, e.g., State v. Phillips, 520 S.E.2d 670, 679 (W. Va. 1999) (holding that "a municipal police officer on off-duty status is not relieved of his obligation as an officer to preserve the public peace and to protect the public" because "such police officers are considered to be under a duty to act in their lawful and official capacity twenty-four hours a day"); State v. Graham, 927 P.2d 227, 230 (Wash. 1996) (noting that "[g]enerally, a police officer's status as a public servant does not end with his or her shift"); Goodwin v. State, 474 S.E.2d 84, 86 (Ga. Ct. App. 1996) (holding that "all law enforcement officers have the general duty to enforce the law and maintain the peace" and that "[t]hey carry this duty 24 hours a day, on and off duty"); State v. Wilen, 539 N.W.2d 650, 658-59 (Neb. Ct. App. 1995) (collecting cases from other jurisdictions supporting its holding that "police officers have a duty to preserve the peace and to respond as police officers at all times").

B.  The Evidence Was Sufficient to Prove Davis Knew Honeycutt Was Engaged in the Performance of His Public Duties

We turn next to Davis's contention that the evidence was insufficient to prove he knew Honeycutt was engaged in the performance of his public duties when he assaulted him.  When considering a defendant's challenge to the sufficiency of the evidence, we view the evidence and all reasonable inferences flowing from the evidence in a light most favorable to the Commonwealth.  Garcia, 40 Va. App. at 189, 578 S.E.2d at 99.  This standard of review requires that we discard the defendant's evidence that conflicts with the Commonwealth's evidence and accept "as true all the credible evidence favorable to the Commonwealth and all fair inferences

_____

[5] Because Honeycutt reasonably believed a violation of the law had occurred and acted pursuant to his duty as a police officer to uphold the law, we reject Davis's corollary argument that Honeycutt acted solely as a "private citizen."

- 6 -

that may be drawn therefrom." Kelly v. Commonwealth, 41 Va. App. 250, 254, 584 S.E.2d 444, 446 (2003) (internal quotations omitted). We further

> "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002); see also McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*). Thus, we do not "substitute our judgment for that of the trier of fact." Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id.

Kelly, 41 Va. App. at 257-58, 584 S.E.2d at 447.

Here, the evidence and the reasonable inferences flowing from the evidence were sufficient such that "any rational trier of fact could have found . . . beyond a reasonable doubt" that Davis knew Honeycutt was engaged in the performance of his public duties. First, Davis knew Honeycutt was a law enforcement officer. Because Davis knew Honeycutt was a law enforcement officer, Davis felt compelled to explain that the hand-to-hand transaction Honeycutt witnessed was innocent. The trial court was entitled to infer that Davis believed he was subject to investigation or arrest if he failed to explain his actions to Honeycutt, a law enforcement officer.

Second, Honeycutt was assaulted only after he informed Davis that he was under arrest for possession of illegal drugs. That Davis knew a law enforcement officer was arresting him for possession of illegal drugs supports the reasonable inference that Davis knew the law enforcement officer was acting pursuant to his duty to uphold the law. The trial court was entitled to rely on this inference in finding that the Commonwealth proved its case beyond a

reasonable doubt.  We therefore hold that the evidence was sufficient to support Davis's

conviction.

III.  Conclusion

For the foregoing reasons, we affirm Davis's conviction.

Affirmed.
